UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK SAMARGANDI, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:09-cv-1577 |
| | § | |
| AMERICAN EXPRESS, MARYLAND | § | |
| NATIONAL BANK, N.A., BANK OF | § | |
| AMERICA, AND JP MORGAN CHASE, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| AMERICAN EXPRESS CENTURION | § | |
| BANK, | § | |
| | § | |
| Counter-Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| MARK SAMARGANDI, | § | |
| | § | |
| Counter-Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Plaintiff and Counter-Defendant Mark Samargandi's Motion for Summary Judgment (Doc. No. 56) and Defendant American Express's and Counter-Plaintiff American Express Centurion Bank's (collectively "American Express" or "Defendant") Motion for Summary Judgment (Doc. No. 51). At the request of the Court, the parties have also submitted memoranda of law regarding the existence of subject matter jurisdiction. (Docs. No. 64, 65).[1]

Upon considering the Motions, all responses thereto, and the applicable law, the Court finds that Plaintiff's Motion for Remand (Doc. No. 65) should be granted, Defendant's Motion

---

[1] Both parties have included in their respective written memoranda of law a prayer for relief that specifically requests remand of this action to state court. Pursuant to Federal Rule of Civil Procedure 7(b), the Court will construe these requests as motions for remand.

1

for Remand (Doc. No. 64) should be granted, Plaintiff's Motion for Summary Judgment (Doc. No. 56) should be denied as moot, and American Express's Motion for Summary Judgment (Doc. No. 51) should be denied as moot.

I.  **FACTUAL BACKGROUND**

This case arises from American Express's purportedly improper attempts to collect alleged consumer debt from Plaintiff Mark Samargandi ("Plaintiff" or "Samargandi").[2] Plaintiff was involved in a receivership action in which the underlying debt was allegedly cancelled because American Express failed to appear in that action. American Express allegedly continued to attempt collection of the debt after the conclusion of the receivership, and made false reports to credit reporting agencies.[3] The following undisputed facts are drawn from the summary judgment record.

Prior to 2003, American Express issued two credit cards (the "Credit Cards") to Samargandi—one for a "Business Platinum Card" account ending in 64005 and one for a "Blue for Business" account ending in 94003. (Doc. No. 51, App. 2, Garabedian Aff. ¶ 17; Doc. No. 55, Exh. 5, Samargandi Aff. at 3, 14.) Under the terms of the Business Platinum Card Agreement, Plaintiff and the employees of his corporations Concordia Suzuki, Inc., Concord Cars of Texas, Inc., Concord Cars of Texas, Inc. d/b/a Oasis Car Company, and Oasis Financial Services, Inc. were to use the Credit Card for business purposes and not for personal, family or household use. (Doc. No. 59, Exh. A at 1, 3.) Plaintiff, as an individual who made charges to the Credit Card, was individually liable for the charges. (*Id.* at 1.) The "Blue for Business" card

---

[2] Mr. Samargandi's name also appears as "Mark Samarghandi" in the summary judgment evidence, including on checks and credit card statements. To ensure consistency with the case caption, the Court will continue to use the spelling "Samargandi."
[3] As reflected in the case caption, Plaintiff originally filed suit against other credit card issuing companies. Plaintiff subsequently dismissed his claims against Defendants JP Morgan Chase, Bank of America, and Maryland National Bank (a predecessor to Bank of America) with prejudice. (Doc. Nos. 35, 48.)

similarly required that charges be made for business purposes only and subjected Samargandi to individual liability for charges made to the card. (Doc. No. 51, App. 1, Hill Aff. Exh. B-4 at 22; Garabedian Aff. ¶¶ 17, 21-24.)

In 2003, Plaintiff's wife, Shahin Samargandhi, filed a petition for divorce in the 284th Judicial District Court of Montgomery County, Texas. Mrs. Samargandhi moved for the appointment of a receiver over five businesses in which Mrs. Samargandhi claimed she had a "community estate." (Hill Aff. Exh B-3 at 9.) Mrs. Samargandhi claimed that she was unable to obtain business records and accounts and that the business owners and/or partners were hiding and disposing of assets. (*Id.*) On September 22, 2003, the court appointed a receiver, J. Marcus "Marc" Hill, as provided under the Texas Civil Practice and Remedies Code (the "September 2003 Order"). (Hill Aff. Exh B-1.) Mr. Hill was given various powers, including "banking and other financial institution transactions" and "claims and litigation," to act on behalf of the following businesses: (1) Concord Suzuki, Inc.; (2) Concord Cars of Texas, Inc.; (3) Concord Cards of Texas, Inc. d/b/ Oasis Car Company; (4) Oasis Financial Services, Inc.; (5) Mohammadreza Dadgar d/b/a Advanta Automotive Group. (*Id.*)

Mrs. Samargandi filed a non-suit of divorce a few months later. (Hill Aff. Exh. B-2.) Almost immediately, Jeff Noia and Ardeshir Darvish (the "Partners") filed a petition to intervene in the receivership due to their status as shareholders of the companies that were described in the September 2003 Order.[4] (Hill Aff. Exh. B-3.) The Partners alleged that the divorce proceedings had been fraudulently initiated in order to create a receivership over the companies listed in the September 2003 Order without joining the corporations, their officers or shareholders in the

---

[4] In the petition to intervene, Mr. Darvish alleged that he was the sole proprietor of Advanta Automotive Group, named in the September 2003 appointing a receiver over that company. Mr. Darvish claimed that, contrary to Plaintiff's representation, Samargandi had no interest in Advanta Automotive Group. (Hill Aff. Exh B-3 ¶¶ 12-13.) Mr. Darvish also clarified that he was formerly known as "Mohammedreza Dadgar," which is the name of the individual associated with the Advantaga Automotive Group in the September 2003 Order. (*Id.*)

3

divorce action. (*Id.* ¶ 13.) The Partners alleged that they had tried to extricate themselves from business dealings with Samargandi. On December 10, 2003, a $2 million sale of Oasis Financial Services Inc.'s assets occurred. (*Id.* ¶ 14.) The Partners asserted that Mrs. Samargandi's non-suit of divorce two days later, *pro se*, was an attempt to force the receiver to distribute the proceeds of the sale without an accounting or payment of debt in favor of creditors and to defeat the Partners' rights as shareholders. (*Id.* ¶ 15.) The Partners requested that the court maintain the receiver in order to liquidate the businesses described in the September 2003 Order, to allocate debts to each corporation, and to pay off certain debts. (*Id.*¶ 17.) In response to the petition for intervention, Plaintiff and Mrs. Samargandhi argued in a motion that the court lost jurisdiction to maintain a receivership once Mrs. Samargandhi non-suited the divorce. (Hill Aff. Exh. B-4 at 1.) Alternatively, Plaintiff requested that the receiver pay off certain liabilities that Plaintiff had incurred on behalf of the companies, including the American Express balances for which Plaintiff was personally liable, prior to the division and distribution of partnership interests among the Partners. (*Id.* at 2-4.)

Mr. Hill continued to act as receiver over the companies listed in the September 2003 Order. He sent notice of the receivership to certain creditors advising that the receivership had been opened. (Doc. No. 55, Exh. 1.) The registered agent for American Express did not receive correspondence sent by Mr. Hill. (Garabedian Aff. ¶ 18.) However, on February 23, 2005, Mr. Hill sent a facsimile communication to Plaintiff's attorney and the Partners describing a phone call he had received from American Express about the receivership. (Doc. No. 55, Exh. 2.) In the fax, Mr. Hill stated that he had been advised by American Express that Plaintiff had "made charges on certain credit cards that could possibly be considered debts of the companies subject to receivership." (*Id.*) Mr. Hill stated that he had told American Express to file claims with the

4

court with a copy to himself. (*Id.*) It is undisputed that American Express never filed a claim for the outstanding balances on the Credit Cards with Mr. Hill or the court.

On August 11, 2005, the court entered an agreed order (the "August 2005 Order") dissolving the receivership and ordering that certain debts be paid to creditors of the business entities subject to the receivership. The August 2005 Order also barred American Express from making any claims both against the estate subject to the receivership and against Plaintiff because American Express "never made written claims on the estate." (Doc. No. 51, App. 8 at 3.) The August 2005 Order listed amounts owing to American Express as $12,800, $22,424.38, and $11,863.58 for a total of $47,087.96. (*Id.*)

In 2005 and 2006, Plaintiff and his attorney wrote to American Express to address ongoing collection attempts by American Express related to the Credit Cards. (Doc. No. 55, Exh. 3, Beale Aff.; Doc. No. 55, Exh. 4, Samargandi Aff.) In the communications, Plaintiff's attorney claimed that the August 2005 Order disposed of any debts owed by Plaintiff to American Express. (Beale Aff. at 3.)

Plaintiff filed suit against American Express in 2008 in Montgomery County, Texas. The case was subsequently removed to federal court on the basis of diversity jurisdiction. This Court denied Plaintiff's motion to remand. (Doc. No. 26.) Plaintiff's Second Amended Petition asserts the following causes of action: (1) violation of the Texas Deceptive Trade Practices Act; (2) violation of the Texas Debt Collection Practices Act; and seeks a declaratory judgment, actual, statutory and exemplary damages, and attorneys' fees. (Doc. No. 29.) In its Third Amended Answer, American Express seeks a declaratory judgment that the August 2005 Order is void as a matter of law and awarding attorneys' fees. (Doc. No. 49.) American Express also has filed in Montgomery County, Texas, a Bill of Review to declare the August 2005 Order void as a matter

5

of law. (Doc. No. 55, Exh. 6, Overstreet Aff. at 4.) Both Plaintiff and American Express have filed motions for summary judgment, which are ripe for disposition.

## II. SUBJECT MATTER JURISDICTION OVER ALL CLAIMS

Federal courts are courts of limited jurisdiction and possess an independent obligation to examine the basis of jurisdiction. *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981). A court must dismiss an action if it determines "at any time" that it lacks subject-matter jurisdiction. FED. R. CIV. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) ("It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking."). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). Challenges to subject matter jurisdiction can be raised at any time or even *sua sponte* by the court. *Johnston v. United States*, 85 F.3d 217, 218 n.2 (5th Cir. 1996). The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Stockman*, 138 F.3d at 151.

The Court uses its *sua sponte* authority to re-examine the basis for subject matter jurisdiction.

### A. Standard for Removal and Diversity Jurisdiction

This case was removed to federal court by Defendant Bank of America pursuant to 28 U.S.C. §§ 1332(a), 1441(a). The removal statute provides that:

> [A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

6

28 U.S.C. § 1441(a). Diversity jurisdiction exists only when the adverse parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Diversity of citizenship is not an issue here; the only question is whether the amount in controversy is sufficient.

The amount is determined at the time of filing the notice of removal, based on the then-existing state court petition, exclusive of interest and costs. 28 U.S.C. § 1332; *see also White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003); *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *St. Paul Reinsurance Co. v. Greenburg*, 134 F.3d 1250, 1253 (5th Cir. 1998). If, from the face of the complaint, the court determines that the amount in controversy is likely to exceed the jurisdictional amount, the court may exercise federal jurisdiction. *See, e.g., Manguno*, 276 F.3d at 723; *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995). Courts consider the types of claims, in addition to the damages alleged, to establish whether it is facially apparent that claimed damages exceed $75,000. *See, e.g., Sorenson v. Ashmore*, 4 F. Supp. 2d 669, 670 (E.D. Tex. 1998). If a state statute provides for attorneys' fees, they are included in the amount in controversy. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d at 723 (internal citations omitted).

When the complaint does not allege a specific amount of damages,[5] the removing defendant may prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount.[6] *See, e.g. Allen v. R&H Oil & Gas Co.*, 63 F.3d at 1335; *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 210 (5th Cir. 2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404,

---

[5] Under Texas law, plaintiffs with an unliquidated claim are to plead only that the damages sought are within the jurisdictional limits of the court. TEX. R. CIV. P. 47.

[6] The *Allen* court suggests that, where an exact amount has been pled, a defendant may also show, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount, unless the plaintiff shows that it is legally certain he cannot recover that amount. 63 F.3d at 1335 n. 14. Also, "[w]here the plaintiff has alleged a sum certain that exceeds the requisite amount in controversy, that amount controls if made in good faith." *Allen v. R&H Oil & Gas Co.*, 63 F.3d at 1335.

1412 (5th Cir.) ("*De Aguilar II*"), *cert. denied*, 116 S.Ct. 180 (1995); *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58 (5th Cir. 1993) ("*De Aguilar I*"). A defendant can satisfy this requirement if "(1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount." *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d at 723. If the defendant meets this burden, to secure a remand the plaintiff must show that, "as a matter of law, it is certain that he will not be able to recover more than the damages for which he has prayed in the state court complaint." *De Aguilar II*, 47 F.3d at 1411. Any ambiguities are construed against removal. *See Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d at 723. The Fifth Circuit has clarified that the plaintiff's burden must be met at the time he files his complaint—this analysis is not a burden-shifting exercise. *In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 387 (5th Cir. 2009) (citing *De Aguilar II*, 47 F.3d at 1417).

A declaratory judgment action is estimated at the value of the right to be protected or the extent of the injury to be prevented. *See, e.g,. Dow Agroscience, LLC v. Bates*, 332 F.3d 323, 326 (5th Cir. 2003), *vacated and remanded on other grounds*, 125 S. Ct. 1788 (2005) (holding that a declaratory judgment action exceeded the jurisdictional amount because the defendant sought to prevent DTPA claims subject to the statute's treble damages provision); *Aladdin's Castle, Inc. v City of Mesquite*, 630 F.2d 1029, 1035-36 (5th Cir. 1980), *rev'd on other grounds*, 102 S. Ct. 1070 (1982); *Sterl v. Sears*, 88 F.Supp. 431, 432 (N.D. Tex. 1950).

In determining the amount of controversy in a suit against several defendants, asserting claims against each, "the test of jurisdiction is the amount of each claim and not their aggregate." *Jewell v. Grain Dealers Mut. Ins. Co.*, 290 F.2d 11, 13 (5th Cir. 1961). "Claims against two or more defendants can be aggregated for the purpose of attaining the jurisdictional amount, as a

general proposition, if they are jointly liable to the plaintiff." *Id.*; *see also Active Mortg., LLC v. Trans Union, LLC*, Civ. Action No. 09-CV-986, 2010 U.S. Dist. LEXIS 117687, *8-*9 (M.D. La. Nov. 4, 2010) (allowing aggregation of claims against defendants to meet the amount in controversy requirement where plaintiff asserted that defendants were jointly and severally liable). In cases involving multiple, severally liable defendants, the amount in controversy must be established separately for each defendant. *Dendinger v. Maryland Cas. Co.*, 302 F.2d 850, 851 (5th Cir. 1962) (plaintiff cannot aggregate claims against two insurance companies that are severally but not jointly liable); *Cronin v. State Farm Lloyd's*, Civ. Action No. H-08-1983, 2008 U.S. Dist. LEXIS 88964, *12 (S.D. Tex. Oct. 10, 2008) (defendant insurance company's removal was proper based on an aggregation of plaintiff's claims against individual underwriters that met the amount in controversy requirement); *Costello v. Capital One NA*, Civ. Action No. 07-CV-1937, 2008 U.S. Dist. LEXIS 35771, *6 (W.D. La. Mar. 4, 2008) (defendant banks cannot obtain removal based on an aggregation of plaintiff's claims against each); *Chase Manhattan Bank N.A. v. Aldridge*, 906 F. Supp. 870, 874 (S.D.N.Y. 1995) (defendant insurance company's removal was improper because plaintiff's claims against individual underwriters could not be aggregated and independently did not meet the amount in controversy); 14B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3704, at 138-41 (3d ed. 1998) ("[T]he cases are quite clear and virtually unanimous that separate and distinct claims by different plaintiffs still cannot be aggregated for purposes of measuring the amount in controversy. The same rule applies when suit is brought by a single plaintiff against multiple defendants."). A court cannot "exercise supplemental jurisdiction over defendants if the claims against them do not meet the minimum amount in controversy." *Cronin*, 2008 U.S. Dist. LEXIS 88964 at *21 (citing 28 U.S.C. § 1367(b)) (excluding from the scope of supplemental jurisdiction

claims against defendants "made parties under Rule 14, 19, 20, or 24"); *see also Pilgrim's Pride Corp. v. Frisco Food Svcs., Inc.*, Civ. Action No. 2:06-CV-512 (JTW), 2007 U.S. Dist. LEXIS 10032, *12-*13 (E.D. Tex. Feb. 13, 2007).

Finally, district courts have generally held that the amount of a defendant's counterclaim against a plaintiff should not be considered in determining the amount in controversy in the removal context. The Fifth Circuit in *Liberal Mut. Ins. Co. v. Horton*, 275 F.2d 148 (5th Cir. 1960), noted the "long established rule that where . . . the jurisdictional amount is in question, and a counterclaim is brought in an amount which, in itself or added to the amount claimed in the complaint, adds up to an amount in excess of the minimum jurisdictional amount, jurisdiction is established from the plaintiff's complaint alone." *Id.* at 152. However, the Fifth Circuit has not applied the *Horton* rule in such a situation nor "squarely addressed the question of whether counterclaims should be considered in calculating the amount in controversy in the removal context." *Gulf-South Piling & Constr., Inc. v. Traylor Bros., Inc.*, Case No. 97-0861, 1997 U.S. Dist. LEXIS 8835, *2 (E.D. La. June 12, 1997). Rather, the "near unanimous rule" of district courts in this circuit and others is to determine the amount in controversy "solely by referring to only the plaintiff's original complaint" and not by including the defendant's counterclaim. *Id.* at *4 (citing cases); *see also Thrash v. New England Mut. Life Ins. Co.*, 534 F. Supp. 2d 691, 695-97 (S.D. Miss. 2008) (citing cases). The rule is consistent with the policy concerns surrounding removal, including the need to construe removal statutes narrowly and allow plaintiffs to be the master of their claims. *Meridian Aviation Svc. v. Sun Jet Intern.*, 886 F. Supp. 613, 615 (S.D. Tex. 1995). Thus, the amount in controversy will be determined here by looking solely at the plaintiff's complaint or by other "summary judgment"-type evidence that focuses on plaintiff's claims for relief.

## B. Analysis

The Court has reviewed the issue of subject matter jurisdiction in this case once before. Soon after removal, Plaintiff moved for remand of the case, arguing among other things that there was an insufficient amount in controversy to create diversity jurisdiction. (Doc. No. 12.) In response, Defendant Bank of America contended that Plaintiff's obligations to it were listed on the August 2005 Order and consisted of over $100,000 in outstanding credit card balances. (Doc. No. 17.) In the Court's August 2009 Memorandum and Order, we accepted the August 2005 Order as evidence of Plaintiff's obligations. (Doc. No. 26.) We held that Plaintiff's request for a declaratory judgment would relieve him of over $100,000 in debt and thus met the amount in controversy requirement. In the Memorandum and Order, the Court did not address the existence of subject matter jurisdiction as to the other Defendants American Express and JP Morgan Chase, nor did any party raise this issue in their briefing on the motion to remand.

It is now clear that, in determining the amount in controversy, the Plaintiff's claim against American Express must be assessed separately from the claims brought against the other Defendants. Plaintiff has never asserted that American Express is jointly liable with Defendants, which would have otherwise allowed Plaintiff's claim against American Express to be aggregated with those against other Defendants. *See Dendinger v. Maryland Cas. Co.*, 302 F.2d at 851. Neither could the Court have exercised supplemental jurisdiction over the claim against American Express without an analysis of whether the claim against American Express independently met the amount in controversy requirement. *See Cronin*, 2008 U.S. Dist. LEXIS 88964 at *21. Therefore, Plaintiff's claim against American Express belongs in this Court only if, at the time of removal, it exceeded $75,000. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d at 723.

## B. Analysis

The Court has reviewed the issue of subject matter jurisdiction in this case once before. Soon after removal, Plaintiff moved for remand of the case, arguing among other things that there was an insufficient amount in controversy to create diversity jurisdiction. (Doc. No. 12.) In response, Defendant Bank of America contended that Plaintiff's obligations to it were listed on the August 2005 Order and consisted of over $100,000 in outstanding credit card balances. (Doc. No. 17.) In the Court's August 2009 Memorandum and Order, we accepted the August 2005 Order as evidence of Plaintiff's obligations. (Doc. No. 26.) We held that Plaintiff's request for a declaratory judgment would relieve him of over $100,000 in debt and thus met the amount in controversy requirement. In the Memorandum and Order, the Court did not address the existence of subject matter jurisdiction as to the other Defendants American Express and JP Morgan Chase, nor did any party raise this issue in their briefing on the motion to remand.

It is now clear that, in determining the amount in controversy, the Plaintiff's claim against American Express must be assessed separately from the claims brought against the other Defendants. Plaintiff has never asserted that American Express is jointly liable with Defendants, which would have otherwise allowed Plaintiff's claim against American Express to be aggregated with those against other Defendants. *See Dendinger v. Maryland Cas. Co.*, 302 F.2d at 851. Neither could the Court have exercised supplemental jurisdiction over the claim against American Express without an analysis of whether the claim against American Express independently met the amount in controversy requirement. *See Cronin*, 2008 U.S. Dist. LEXIS 88964 at *21. Therefore, Plaintiff's claim against American Express belongs in this Court only if, at the time of removal, it exceeded $75,000. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d at 723.

The Court must also disregard the amount of any counterclaim made by American Express against Plaintiff. We note that American Express's Original Answer, filed in state court prior to removal, contained only a general denial. (Doc. No. 1, Exh. L.) In American Express's Amended Answer with Counterclaim, it asserted a cause of action for breach of contract and alleged unpaid charges on the Credit Cards in the amount of $37,055.40 and requested a declaratory judgment that the August 2005 Order is void as a matter of law. (Doc. No. 24.) American Express has since dropped the breach of contract counterclaim from its Second Amended Answer with Counterclaim. (Doc. No. 26.) Regardless of its value, American Express's remaining counterclaim for declaratory judgment should not be added to Plaintiff's claims in calculating the amount in controversy. *Meridian Aviation Svc. v. Sun Jet Intern.*, 886 F. Supp. at 615.

Here, the face of Plaintiff's Original Petition filed in state court states that he seeks monetary relief in aggregate of $50,000 or less, excluding attorneys' fees. (Doc. No. 1, Exh. B at 1.) In order to overcome the exact amount pled on Plaintiff's complaint, American Express must prove by a "preponderance of the evidence" that the amount in controversy will exceed $75,000. *See Allen*, 63 F.3d at 1335. In its Memorandum of Law on the Issue of Remand, American Express has failed to prove that the amount in controversy will exceed $75,000, and, in fact, has argued that the $50,000 figure identified in Plaintiff's complaint should control the analysis of the amount in controversy. (Doc. No. 64.) American Express has prayed for remand of this case to state court for further proceedings. In its Memorandum of Law on Subject Matter Jurisdiction of Claims Against American Express, Plaintiff similarly argues that the amount in controversy is below $75,000. (Doc. No. 65.) Neither party has demonstrated that requisite amount in controversy has been met. In addition, the face of Plaintiff's complaint does not reveal an

amount in controversy in excess of $75,000. Thus, the Court lacks diversity jurisdiction and, in turn, subject matter jurisdiction. Remand of this action to state court is warranted.

### III. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Remand (Doc. No. 65) is **GRANTED**, Defendant's Motion for Remand (Doc. No. 64) is **GRANTED**, Plaintiff's Motion for Summary Judgment (Doc. No. 56) is **DENIED AS MOOT**, and Defendant's Motion for Summary Judgment (Doc. No. 51) is **DENIED AS MOOT**. This action is hereby **REMANDED** to the 269th District of Harris County, Texas.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 18th day of January, 2011.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE